[Cite as *Bottum v. Jankovic*, 2013-Ohio-4914.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99526**

# HEATHER BOTTUM

PLAINTIFF-APPELLANT

vs.

# JACK JANKOVIC

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. PR 07701728

**BEFORE:** Celebrezze, P.J., Jones, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 7, 2013

**FOR APPELLANT**

Heather Bottum, pro se
4103 Elmore Road
Fairview Park, Ohio   44126


**ATTORNEY FOR APPELLEE**

James L. Lane
Hermann, Cahn & Schneider
1301 East Ninth Street
Suite 500
Cleveland, Ohio   44114


**For Cuyahoga Jobs and Family Services**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Joseph C. Young
Assistant Prosecuting Attorney
Cuyahoga Jobs and Family Services
P.O. Box 93894
Cleveland, Ohio 44101-5984

FRANK D. CELEBREZZE, JR., P.J.:

**{¶1}** Appellant, Heather Bottum, brings the instant appeal, pro se, seeking to overturn the decision of the common pleas court, juvenile division, adopting a shared parenting plan agreed to before the court by Bottum and Jack Jankovic, the father of their child, but which Bottum later refused to sign. She argues her consent to the agreement was not voluntary, the trial court erred in allowing Jankovic to raise issues previously decided in a prior custody decree, in not following R.C. 3109.04(E)(1)(a), in ordering her to sign a broad release of her medical records, and in allowing Jankovic's expert to examine her while refusing to allow her expert to examine Jankovic. After a thorough review of the case law and record, we affirm the decisions of the trial court.

## I. Factual and Procedural History

**{¶2}** The parties began dating in 2004, and that relationship produced a child, born June 28, 2005. A few years later, the parties instigated litigation concerning custody of their child. The parties entered into a shared parenting agreement in 2009, which was approved by the court on February 27, 2009. Jankovic was to pay Bottum approximately $30,000 a year in child support with an additional monthly deposit of $1,500 into an irrevocable trust for the child's future needs, including his education. Bottum attempted to void the agreement, claiming Jankovic's attorney amended the agreement after presentation to the court but prior to journalization. The trial court rejected that argument and overruled Bottum's motion to amend.

{¶3} On July 13, 2010, Jankovic filed an emergency motion for temporary custody. Jankovic's pleadings before the trial court indicated he became concerned for his child's safety after Bottum exhibited strange behavior. This motion contained allegations of mental instability and neglect. Both parties requested psychiatric evaluations of the other. The trial court granted Jankovic temporary custody of the child based on the allegations of neglect and the exhibits attached to his motion, including a police report. The court also ordered Bottum to undergo a psychiatric evaluation and ordered both parties to undergo a child custody evaluation. The court imposed supervised visitation restrictions on Bottum.

{¶4} Then, on September 22, 2010, Jankovic moved to terminate the shared parenting agreement journalized February 27, 2009. A hearing was set for January 14, 2011. Bottum moved to terminate supervised visitation and opposed the motion. The case was continued several times with more motions filed by the parties. Also, the visiting judge presiding over the case had to recuse based on a conflict that resulted when his son joined a law firm representing one of the parties.

{¶5} On or about February 21, 2012, the trial court vacated its supervised visitation order and denied Bottum's motion for a new custody evaluation. Bottum appealed from this order on March 22, 2012. This appeal was dismissed on procedural grounds on August 13, 2012. Trial commenced on December 4, 2012, but was continued to January 8, 2013. After Bottum admitted to issues regarding drinking and noncompliance with her recommended medication, the trial court reimposed supervised visitation on

December 5, 2012. During a recess in the trial, Bottum and Jankovic negotiated an agreement. The trial court's journal entry indicates:

> During * * * trial recess on January 9 [sic], 2013, the parties came to an agreement that resolved all issues.
>
> The agreement was read into the record and the Court inquired of the parties if, in fact, this was their agreement and if they did agree to the representations read into the record.
>
> Both Mother and Father said it was their agreement and the [sic] accepted the agreement as read into the record.
>
> The parties and counsel were to return to Court on the following day, January 9, 2013, to sign a written copy of the agreement. The parties, with counsel, appeared in Court and Father and counsel signed the agreement. Mother's counsel indicated that Mother had changed her mind and would not sign. She indicated she wanted full custody of the child.
>
> Counsel for Mother informed the Court that his client was acting against his advice and Moved to Withdraw. The Motion is granted.
>
> The Court finds that the agreement of the parties as read into the record January 8, 2013, was agreed to by the parties and is in the best interests of the child.
>
> Accordingly, the written agreement presented to the Court has been signed by the judge and is made an Order of the Court.

Attached to the order was the parties agreement as spread upon the record at the January 8, 2013 hearing.

{¶6} After the agreement was set forth on the record, the trial court asked Bottum if she understood it to be the agreement of the parties. She stated it was, except that she thought the agreement was to include a provision that allowed her to come back in 12 months and, if she met certain benchmarks, relitigate custody. Jankovic's attorney indicated such a provision had been discussed but had not been agreed to. He also

explained that Bottum always has the ability, as any party does, to relitigate issues of custody after a change in circumstance. Bottum's attorney indicated this was the agreement to which his client agreed.

{¶7} After filing a few motions irrelevant to the present appeal, Bottum filed a motion for relief from judgment on January 31, 2013, which was not ruled on by the time she filed a notice of appeal on February 7, 2013.

{¶8} Bottum's appeal seeks to vacate the trial court's order, and she assigns five errors for review:

> I. The trial court erred by abusing its discretion in ordering agreements (parenting plan and agreed judgment entry) over [Bottum's] confusion, objection, request to adjudicate all claims, issues, and to continue trial, under circumstances showing [she] did not act voluntary [sic] and the court, on the record believed [she] was not mentally fit.
>
> II. The [trial] court erred as a matter of law by not following the law in Ohio governing res judicata, and barring [Jankovic] from relitigating the same issues, claims, allegations, and evidence adjudicated in the parties' prior February 27, 2009 custody decree, all which substantially prejudiced [Bottum] throughout the case and at trial.
>
> III. The trial court erred as a matter of law and/or abused its discretion by not following the law in Ohio as stated at O.R.C. 3109.04(E)(1)(a); alternatively, the trial court erred by abusing its discretion not making a ruling on [Bottum's] motion to dismiss under said statute, instead subjecting [her] to lengthy litigation and unfair trial.
>
> IV. The trial court abused its discretion where, in July 2010, after [Jankovic] filed for emergency temporary custody the trial court ordered [Bottum] to sign broad HIPPA MEDICAL AUTHORIZATION, the same HIPPA AUTHORIZATION the trial court ordered [her] to sign during the parties' prior custody battle from 2007 to 2009, and the trial court failed to restrict or limit the use and scope of such evidence in the parties' second custody battle involving the same child.

V.  The trial court erred in abusing its discretion by granting [Jankovic's] motions to have [his] paid experts examine [Bottum], and further committed error in repeatedly denying [her] numerous motions requesting that her expert also evaluate the parties.

## II.  Law and Analysis

### A. Formation of a Settlement Agreement

{¶9} In Bottum's first assignment of error, she argues the trial court erred in adopting the settlement reached by the parties because she refused to sign the agreement.

{¶10} "Decisions concerning the allocation of parental rights and responsibilities rest within the sound discretion of the trial court."  *In re A.M.S.*, 8th Dist. Cuyahoga No. 98384, 2012-Ohio-5078, ¶ 17, citing *In re D.J.R.*, 8th Dist. Cuyahoga No. 96792, 2012-Ohio-698.  An abuse of discretion is evident where the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶11} A settlement agreement "may be either written or oral, and may be entered into prior to or at the time of a divorce hearing."  *Haas v. Bauer*, 156 Ohio App.3d 26, 2004-Ohio-437, 804 N.E.2d 80, ¶ 16 (9th Dist.), citing *Muckleroy v. Muckleroy*, 9th Dist. Summit No. 14443, 1990 Ohio App. LEXIS 3933 (Sept. 5, 1990).  Where the agreement is read into the record in open court and agreed upon, the court may enter judgment adopting its terms.  *Grubic v. Grubic*, 8th Dist. Cuyahoga No. 73793, 1999 Ohio App. LEXIS 4200, *9 (Sept. 9, 1999), citing *Zigmont v. Toto*, 47 Ohio App.3d 181, 547 N.E.2d 1208 (8th Dist.1988).  *See also Vasilakis v. Vasilakis*, 8th Dist. Cuyahoga No. 68763,

1996 Ohio App. LEXIS 2569 (June 20, 1996) (a trial court may adopt an agreed judgment entry); *Hupp v. Hupp*, 5th Dist. Fairfield No. 08-CA-36, 2009-Ohio-1851, ¶ 10.

> Absent fraud, duress, overreaching or undue influence, a settlement agreement between parties in a divorce is enforceable. In *Walther v. Walther* (1995), 102 Ohio App.3d 378, 657 N.E.2d 332, the court held that "settlement agreements are favored in the law. Where the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract. Neither a change of heart nor poor legal advice is a ground to set aside a settlement agreement. A party may not unilaterally repudiate a binding settlement agreement."

*Diguilio v. Diguilio*, 8th Dist. Cuyahoga No. 81860, 2003-Ohio-2197, ¶ 33.

{¶12} However, "[w]hen the in-court record does not reflect an agreement and/or the proposed entry does not reflect an agreement, and there is a factual dispute present between the parties, the trial court must conduct an evidentiary hearing to adjudicate the issues in dispute." *Phillips v. Phillips*, 5th Dist. Stark Nos. 2004CA00105 and 2004CA00005, 2005-Ohio-231, ¶ 27, citing *Morform Tool Corp. v. Keco Industries, Inc.*, 30 Ohio App.2d 207, 284 N.E.2d 191 (1st Dist.1971); *Bolen v. Young*, 8 Ohio App.3d 36, 455 N.E.2d 1316 (10th Dist.1982). And "[w]here an agreement is purportedly arrived at in the presence of the trial judge and approved by the parties, but its terms are not memorialized on the record and one of the parties later disputes the terms of the agreement by refusing to approve an entry journalizing the agreement," the court must inquire further and perhaps not adopt the agreement. *Bolen* at 37.

{¶13} In the present case, the parties negotiated an agreement during a break in the trial. The parties set forth the operative provisions of their agreement on the record and

indicated assent to those provisions before the trial court. Therefore, the trial court had all that was required to adopt the settlement in this case.

{¶14} This court has previously addressed similar arguments raised by Bottum in her first assignment of error. *Colosimo v. Colosimo*, 8th Dist. Cuyahoga No. 91883, 2009-Ohio-3892. There, the parties entered into a negotiated divorce settlement agreement in an oral hearing before the court. The court then ordered the parties to draft a judgment entry setting forth the agreement that would be adopted by the trial court. After the judgment entry was drafted by the wife's attorney and provided to the husband's counsel, the husband moved to set aside the in-court agreement. *Id.* at ¶ 4-5. This court upheld the trial court's adoption of the parties' agreement over the husband's objection. *Id.* at ¶ 12. This court found that an enforceable agreement existed once the parties agreed, in open court, to the proposed settlement, even where it appeared the agreement was not written and signed by the parties. *Id.* Therefore, simply because Bottum refused to sign the agreement after having agreed to its terms in open court does not preclude the court from adopting the settlement.

{¶15} In order to escape the agreed parenting plan, Bottum must allege her assent was procured through fraud, duress, overreaching, or undue influence. *Colosimo* at ¶ 12. Bottum argues she was confused and pressured into agreeing to the terms. At all times during these proceedings, she was represented by counsel who advocated fiercely on her behalf. Despite sound advise from counsel, Bottum continued to memorialize her destructive behavior in emails and voicemails sent to Jankovic and the person performing

the custody evaluation. She testified for several hours leading up to her decision to settle, and her answers to questions did not demonstrate confusion or a lack of comprehension of the proceedings. She also referenced the suit several times in her emails, the content of which demonstrated she understood the proceedings.

{¶16} Bottum now argues she was under duress because of statements made by the trial court, the court's consideration of matters prior to the parties' 2009 shared parenting agreement, and because the trial court had failed to act in an impartial manner, denying all of her motions but granting all of Jankovic's.

{¶17} The impartiality argument is factually inaccurate. Some of the motions Bottum references, such as her motion to have Jankovic evaluated by a mental heath professional, were denied by the prior judge assigned to the case. The trial judge at the time of the settlement agreement acted properly and impartially. In fact, this judge removed supervision requirements imposed by the previous judge. There is no indication in the record that the trial court's actions exerted undue pressure on Bottum to settle the matter.

{¶18} The trial court did consider matters prior to the parties' 2009 shared parenting agreement when it was supposed to be determining if a significant change in circumstances since that agreement necessitated revisiting the subject. While opening statements and some questions focused on actions that predated the motion to modify, the vast majority of questions asked by opposing counsel focused on Bottum's behavior and circumstances that had occurred since the motion was filed. Much of the damaging

evidence and admissions focused on Bottum's actions, voicemails, and emails that occurred in the weeks leading up to trial. During cross-examination of Bottum, some instances of prior mental health treatment were discussed, but much of it related to her diagnosis and treatment during a 2010 hospitalization. The portion of testimony that focused on earlier treatment related to Bottum's medication-compliance history, or lack thereof.

{¶19} The determination the trial court must make is to assess the circumstances that have evolved since the prior parenting plan and determine if they have so changed that modification is necessary.

> R.C. 3109.04(E)(1)(a) governs the modification of an existing parenting agreement. The statute provides that a court may not grant a modification of parental rights unless, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, the court finds: (1) there was a change in circumstances; (2) a modification is necessary to serve the best interest of the child; and (3) the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. R.C. 3109.04(E)(1)(a)(iii).

*In re E.R.P.*, 8th Dist. Cuyahoga No. 97124, 2012-Ohio-1053, ¶ 16.

{¶20} The consideration of events prior to the 2009 parenting plan was inappropriate under this statute. However, this error would not have changed the outcome. The prior medical records and testimony regarding them were more about diagnosis and treatment, a continuing lack of medication compliance, and substance abuse. The behavior Bottum exhibited, as evidenced by police reports, voicemails, emails, and threats made against Jankovic contained in psychological reports, were the most damning, and all of those were proper for consideration. The trial court's

consideration of prior events did not constitute coercive action that deprived Bottum of her ability to resist entering into a settlement agreement.  There is substantial evidence of a significant change in circumstance in the record to demonstrate that, even without this information, the court would have no problem complying with R.C. 3109.04 and ordering a modification of custody.

{¶21} Finally, statements the court made regarding arguments advanced by Jankovic's counsel are misconstrued by Bottum.  When being questioned about Bottum's ability to work, Jankovic's attorney took a contrary position than previously argued.  Earlier in the proceedings, Jankovic had attempted to paint Bottum as unable to function and care for her child.  The trial court recognized the discordant nature of trial counsel's questioning and stated, "[w]ell, if she's as complicated and as mentally disturbed as you say she is on the other end of the case, then probably she's not able to work."

{¶22} Bottum cites to this statement as being coercive.  However, the statement is simply drawing attention to the contrary arguments advanced by Jankovic during the same proceeding.  The statement was not coercive, and neither were others referenced by Bottum in the present appeal.

{¶23} Here, there was a meeting of the minds regarding the terms of a settlement agreement to which all parties agreed in open court.  That agreement is binding on the parties, and the trial court did not err in adopting it as its judgment in this case.  *See Campbell v. Buzzelli*, 9th Dist. Medina No. 07CA0048-M,  2008-Ohio-725.

## B.  Alleged Trial Errors

**{¶24}** In her next four assignments of error, Bottum asserts various errors that occurred during the trial that require reversal. These errors are not related to the settlement of all disputes that was voluntarily entered into and now controls the parties. Because the settlement is the basis for the trial court's ruling, and not the trial proceedings, any errors are waived or are moot. *Gabriel v. Gabriel*, 6th Dist. Lucas No. L-08-1303, 2009-Ohio-1814, ¶ 25; *Kerwin v. Kerwin*, 6th Dist. Lucas No. L-04-1002, 2004-Ohio-4676, ¶ 9.

### III. Conclusion

**{¶25}** The parties entered into a verbal settlement agreement on the record before the trial court with specific terms sufficiently definite to form the basis of an agreement. The trial court did not err in adopting the agreement of the parties and allocating parental rights accordingly. Because the parties settled the dispute midway through trial, any alleged errors that occurred during trial are moot.

**{¶26}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EILEEN T. GALLAGHER, J., CONCUR